GRIFFIN, J.
Kenneth Chukes [“Chukes”] appeals an order finding no probable cause to release him from his involuntary civil commitment under the Jimmy Ryce Act. See § 394.918(4), Fla. Stat. (2010). We reverse because Chukes met his burden of proof at the section 394.918(3) limited probable cause hearing, and is entitled to a trial.
Chukes was convicted of a lewd act with a child and attempted sexual battery. This Court affirmed that conviction. *952 Chukes v. State, 641 So.2d 82 (Fla. 5th DCA 1994). Upon completion of his prison term in 2002, the State successfully sought to have Chukes civilly committed under the Involuntary Civil Commitment of Sexually Violent Predators Act, formerly known as the Jimmy Ryce Act (“the Act”), sections 394.910-.32, Florida Statutes. The court found Chukes to be a sexually violent predator and committed him under the Act in 2002. We affirmed that decision as well. Chukes v. State, 840 So.2d 255 (Fla. 5th DCA 2003). By statute, the commitment term will last until such time as his “mental abnormality or personality disorder has so changed that it is safe” for him to be at large. Id.
The Act requires annual mental examinations and annual review hearings for persons committed under it. Specifically, section 394.918(l)-(3), Florida Statutes (2010), provides:
394.918. Examinations; notice; court hearings for release of committed persons; burden of proof.
(1) A person committed under this part shall have an examination of his or her mental condition once every year or more frequently at the court’s discretion. The person may retain or, if the person is indigent and so requests, the court may appoint, a qualified professional to examine the person. Such a professional shall have access to all records concerning the person. The results of the examination shall be provided to the court that committed the person under this part. Upon receipt of the report, the court shall conduct a review of the person’s status.
(2) The department shall provide the person with annual written notice of the person’s right to petition the court for release over the objection of the director of the facility where the person is housed. The notice must contain a waiver of rights. The director of the facility shall forward the notice and waiver form to the court.
(3)The court shall hold a limited hearing to determine whether there is probable cause to believe that the person’s condition has so changed that it is safe for the person to be at large and that the person will not engage in acts of sexual violence if discharged. The person has the right to be represented by counsel at the probable cause hearing, but the person is not entitled to be present. If the court determines that there is probable cause to believe it is safe to release the person, the court shall set a trial before the court on the issue.
(Emphasis added). Pursuant to section 394.918, the State gave Chukes notice in February 2011 that his annual review was due. Attached to the notice was a report by Dr. Shawn Duffee, a psychologist with the state treatment center, who recommended that Chukes continue treatment at the Florida Civil Commitment Center. Chukes filed a report by a psychologist, Dr. Chris Carr, who recommended that Chukes be released. Dr. Carr opined that Chukes’ mental condition had changed and that it was safe for him to be at large.
On May 24, 2011, the court held Chukes’ 2011 annual limited probable cause review hearing. The court determined that no probable cause existed to believe that Chukes’ condition had so changed that it was safe for him to be at large and that he would not engage in acts of sexual violence if released. The court remarked:
The diagnostic issues in the report and diagnosis, lacks of paraphillia. And the new report appears to be exactly- the same paragraph. Some of the sentences are exactly the same.
[[Image here]]
But, you know, his diagnosis perhaps might be — might change just a little bit over the — over the period or almost two- *953 and-a-half years, which I — well—two- and-a-half just seems like he’s rehashing his same report.
(Pause)
In his conclusion on the new report, Dr. Carr said, it’s my clear opinion that Mr. Chukes has undergone serious changes as a result of participation in an intensive long-term treatment program. It is my confident opinion that Mr. Chukes is presently safe to be at large in a community.
Well, he doesn’t say which areas he’s undergone changes in or what those changes are. He — he’s certainly in treatment, and he’s in Level III of his treatment and — which he has not completed. And he has not completed Phase IV or a — the treatment. But he doesn’t talk about which aspects of his treatment have been helpful to Mr. Chukes and whether or not he’s still in treatment, or whether or not further treatment as a sexually violent predator is beneficial to Mr. Chukes or not. I think the report is not adequate.
All right. I’ll deny ... this report, and I’ll require that he continues with his current level of treatment.
And the other thing is, if — and it’s really sort of a disservice, I think, to your client. But I think we — the doctors ought to at least refresh these reports. I mean, we should not be paying them to do the same thing that has been done already.
[[Image here]]
I do think that there’s a problem with Carr’s report, and certainly he’s — he’s not properly serving your client if he doesn’t at least go through the trouble of updating his report. Maybe you ought to think about having a pep talk with them, or looking at someone else. Some of the paragraphs are exactly, I think, the same. And two-and-a-half years to me, it just seems like he ought to — I don’t see that he really — I don’t know that he really knows which— what’s going on with Mr. Chukes that well.
Chukes filed the instant appeal challenging that order.
On appeal, Chukes argues that the court erred in concluding that Dr. Carr’s report does not establish probable cause to believe his condition had changed. He contends that the court’s sole reason — that Dr. Carr’s report was not materially different from the report he submitted for Chukes’ 2009 review — is not supported by the record. Chukes also argues that the trial court applied the wrong rule of law because the trial court did not conduct a genuine review of his status, but instead merely rubber-stamped a previous ruling by a predecessor judge. He maintains that Dr. Carr’s 2011 report does not merely replicate his 2009 report but, instead, contains a significant amount of new information and evaluation and that it was incumbent on the judge to conduct a reasonably searching review of the report and make a determination on its merits.
The State asserts that the 2011 report, like the 2009 report, focuses largely on Dr. Carr’s past conclusions that Chukes does not have qualifying paraphilia and never qualified for commitment as a sexually violent predator. The State further asserts that Dr. Carr’s report does not support his conclusion that Chukes is safe to be discharged, even though he has yet to complete the treatment program. The State claims that the report does not meet the “safe to be at large” standard for release set forth in the statute. See Westerheide v. State, 888 So.2d 702, 706 (Fla. 5th DCA 2004). The State also contends that, absent evidence that Chukes has completed his treatment program, or advanced to the point where treatment is no longer neces *954 sary, no substantial basis exists to support a finding of probable cause.
The trial court’s determination of the legal issue of probable cause is subject to a de novo standard of review. State v. Glatzmayer, 789 So.2d 297 (Fla.2001). A judge’s review of the evidence in a section 394.918(3) limited probable cause hearing is similar to an evaluation conducted in response to a motion for directed verdict in that the court must determine the sufficiency of the evidence presented without weighing it and making credibility determinations. See In re Commitment of Allen, 927 So.2d 1070, 1074 (Fla. 2d DCA 2006); Westerheide, 888 So.2d at 706. “[I]f the committed person presents evidence supporting release at a limited probable cause hearing, the trial court considers only that evidence to determine probable cause; it does not weigh the evidence against any ... evidence presented by the State.” Allen, 927 So.2d at 1074. To make the probable cause determination, the court must assume that the petitioner’s evidence is true, and then decide whether there is probable cause to believe that the petitioner’s condition has changed. Westerheide, 888 So.2d at 706. If the petitioner satisfies this burden of proof, then a full trial should be held under section 394.918(4). Allen, 927 So.2d at 1074. The court’s task is not to make a final determination on the conflicting evidence, but rather to determine whether there is sufficient evidence to cause a person of ordinary prudence to conscientiously entertain a reasonable belief that the committed person’s mental abnormality or personality disorder has so changed that the person is safe to be at large. See State v. Robbins, 785 So.2d 620, 621 (Fla. 5th DCA 2001).
In this case, the evidence at the annual review hearing consisted of reports from Dr. Duffee, who performed Chukes’ annual review, and Dr. Carr, an independent examiner. Dr. Duffee’s 2011 report found that Chukes was progressing in his treatment. However, the report found that Chukes would benefit from consistently applying himself toward obtaining his GED. It also found that Chukes would benefit from interventions further aimed at enhancing his ability to make and maintain emotionally close relationships with adults in order to further reduce his risk for sexual reoffending. The report further found that, although Chukes is invested in treatment and has made significant progress, he has yet to fully address relevant treatment issues that are associated with his offending history. The report recommended that Chukes continue treatment at the Florida Civil Commitment Center. Missing from the report was any conclusion that Chukes’ mental abnormality or personality disorder was such that it was likely that he would engage in repeated acts of sexual violence.
Dr. Carr’s 2011 report acknowledged that he has completed prior reviews in the past indicating that Chukes did not meet commitment criteria. The 2011 report updated his status based on the GEO “Treatment Progress Review” dated February 18, 2011. The report concluded that Chukes’ behavior had changed in positive ways, as a result of his participation in the long term, systematic and intensive treatment program. Dr. Carr noted that Chukes had been at the treatment facility for over ten years and staying at the center any longer would likely be unproductive, as there is a danger of becoming institutionalized, but that was not necessary based on his risk. The report concluded that Chukes was unlikely to engage in acts of sexual violence if discharged in the community. His risk was low. Dr. Carr opined that Chukes was safe to be at large in the community, that he no longer met commitment criteria and that he was no longer in need of commitment.
*955 The report continued with an appendix incorporating findings and conclusions from the 2009 report by Dr. Carr. The report noted that Chukes’ charges occurred between the years 1989 to 1992 when he was fourteen to sixteen years old. The report also noted that his offense was not predatory; it was an incest-type of offense where no force was used and no threats were used to keep the victim from talking about the abuse. In the 2011 report, the results of the Static-99 test (an actuarial test used to determine the chances of a person committing a new sexual offense once he or she is released from prison) administered to Chukes reflected he had a “LOW-MODERATE Risk Category.” Dr. Carr suggested that his score was remarkably low and implied very low risk. Dr. Carr commented on the fact that, in 2010, Chukes “passed” an extensive polygraph, which included questions concerning all types of deviant thoughts. Dr. Carr wrote that this information was critical because living for ten years without such deviant sexual thoughts was an indication of positive change. Dr. Carr also commented that the second most powerful predictor of sexually deviant behavior was ongoing antisocial behavior and that Chukes has demonstrated no evidence of ongoing antisocial behavior. Dr. Carr stated that it was his clear opinion that Chukes had undergone serious changes as a result of participation in an intensive long term treatment program. It was also Dr. Carr’s confident opinion that Chukes was presently safe to be at large in the community. Dr. Carr made the following special note:
It is worth noting that this individual was initially evaluated in 1999 when the first evaluations for civil commitment of sexual offenders were done in Florida. This evaluator has completed well over one hundred initial evaluations for DCF and also worked at the FCCC. The general expertise in conducting these evaluations has increased significantly over the years. In addition, the risk instrument used in these evaluations has changed remarkably, resulting in lower predictions of recidivism. In my opinion, this individual would be highly unlikely to be referred for commitment if his initial evaluation occurred at this time. In other words, his risk was never high to begin -with.
In reaching its conclusion that the 2011 report was inadequate, the court found:
In his conclusion on the new report, Dr. Carr said, it’s my clear opinion that Mr. Chukes has undergone serious changes as a result of participation in an intensive long-term treatment program. It is my confident opinion that Mr. Chukes is presently safe to be at large in a community.
Well, he doesn’t say which areas he’s undergone changes in or what those changes are. He — he’s certainly in treatment, and he’s in Level III of his treatment and — which he has not completed. And he has not completed Phase IV or a — the treatment. But he doesn’t talk about which aspects of his treatment have been helpful to Mr. Chukes and whether or not he’s still in treatment, or whether or not further treatment as a sexually violent predator is beneficial to Mr. Chukes or not. I think the report is not adequate.
The trial court focused on the fact that some of the conclusions Dr. Carr reached in 2009 were included within his 2011 report. Although these statements were included in the 2009 report as well, there is no logical reason for Dr. Carr to rewrite his conclusions if his opinion has not changed. The trial court’s suggestion that the 2011 report is merely a rehash of the 2009 report is simply not accurate when they are examined side by side. The 2011 report discusses each of the rationales for *956 his 2011 conclusion. Reviewing the report in the light most favorable to Chukes, he presented sufficient evidence at the limited probable cause hearing, and he was entitled to a full trial pursuant to section 394.918(4).
REVERSED and REMANDED.
ORFINGER, C.J., and EVANDER, J., concur.