COHEN, J.
Johnny Holder appeals an order denying him a trial on the issue of whether he should be released from involuntary civil commitment. The trial court found that he did not establish probable cause to believe that his condition has so changed that it is safe for him to be at large. We disagree and reverse.
Holder was committed to the Florida Civil Commitment Center (FCCC) in July of 2007 pursuant to the Involuntary Civil Commitment of Sexually Violent Predators Act.[1] His commitment was predicated on two incidents. The first occurred when he was twelve years old and involved a three-year-old girl; the second occurred when he was sixteen and involved “consensual”[2] sex with a thirteen-year-old girl. Holder is now twenty-five years old.
Holder was initially evaluated in 2007 by the Department of Children and Families’ multidisciplinary team. He was diagnosed with paraphilia not otherwise specified, cannabis abuse, conduct disorder, antisocial personality disorder, depressive disorder, and borderline intellectual functioning. The doctors who evaluated Holder concluded that he met the commitment criteria for sexually violent predators. On June 22, 2007, a jury found Holder to be a sexually violent predator and he was civilly committed to a treatment facility.
In 2012, the State sent Holder an annual notice of right to clinical examination and right to petition for release, as required by statute. § 394.918(l)-(2), Fla. Stat. (1999). It attached the FCCC’s annual review report, also required by statute. Id. The report contained a discussion of Holder’s participation in various treatment programs — much of which was positive — but noted that Holder had yet to complete the first phase of a comprehensive treatment program. It also reported that he received seven incident reports related to disciplinary behavioral management during the prior year. The report concluded: Holder “has yet to fully address relevant treatment issues (i.e.: sexual interests, distorted attitudes and behaviors, socio-affec-tive issues and self-management) that are associated with his offending history. Therefore, it is recommended that Mr. Holder continue treatment at the Florida Civil Commitment Center.”
In support of release, Holder submitted the reports of two psychologists, Dr. Peter Bursten and Dr. Gregory DeClue. These reports both concluded that Holder did not continue to meet the criteria for civil commitment as a sexually violent predator. Dr. Bursten’s report first noted that Holder’s second offense involved consensual sex with someone of comparable age, which did not reflect sexual deviance. Thus, Holder had not displayed sexual deviance for over ten years. Second, it noted that Holder was administered a penile plethys-mograph and a polygraph in 2008, the results of which indicated that Holder did not maintain any patterns of sexual deviance. Given this information, Dr. Bur-sten’s report found that there was ample evidence to support that Holder’s “mental abnormality” and diagnosis of paraphilia had changed and that he no longer main *138 tained patterns of sexual deviance. The report concluded: “In this case, it is of utmost importance to differentiate between (general) behavioral difficulties and the presence of a Sexual Disorder that renders an individual LIKELY to sexually re-offend.”
Dr. DeClue’s report was more detailed. It cited three reasons for its conclusion that Holder’s condition had significantly changed. First, it noted that Holder could no longer be diagnosed with paraphilia because he exhibited no signs of paraphilic urges or fantasies leading to sexual arousal. Second, the criteria for applying the STATIC — 99 risk assessment — an actuarial test used to determine the likelihood that a sex offender will reoffend — to juvenile offenders had changed since Holder’s commitment. Under the revised rules, Holder’s likelihood of recidivism within five years was less than 13%, whereas it was 39% in 2007. Dr. DeClue appended statistical studies to the report to support these findings. Third, there was no evidence Holder ever engaged in sexually deviant behavior or fantasies during his adult life; this exhibited a change in behavior since his admission. Dr. DeClue’s report also noted that Holder had completed various treatment programs and had passed four GED examinations. The report concluded that “available evidence clearly shows that Johnny Holder’s mental abnormality or personality disorder has so changed that it is safe for him to be at large.”
The trial court considered the evidence and found that probable cause did not exist to believe that Holder’s condition had so changed that it was safe for him to be at large and that he would not engage in acts of sexual violence if released. Thus, it ordered that Holder “shall remain in custody of the Department of Children and Families in a secure facility.” In so concluding, the trial court repeated the findings of Dr. DePass’s report, which it apparently accepted as true. It dismissed Holder’s reports, stating, “[t]he Court finds that the Defense expert’s reports are insufficient to demonstrate probable cause.”
The trial court’s determination of the legal issue of probable cause is subject to a de novo standard of review. Chukes v. State, 90 So.3d 950, 954 (Fla. 5th DCA 2012) (citing State v. Glatzmayer, 789 So.2d 297 (Fla.2001)).
The Involuntary Civil Commitment of Sexually Violent Predators Act (“the Act”) provides the procedures for civilly committing sexually violent predators. See generally §§ 394.910-.932, Fla. Stat. (1999). The Act requires annual mental examinations of persons committed under the Act, and the reports from those examinations are to be provided to the circuit court. Id. § 394.918(1). Committed persons may also retain a qualified professional to examine them, id., and may petition the court for release, id. § 394.918(2). The court is then to “hold a limited hearing to determine whether there is probable cause to believe that the person’s condition has so changed that it is safe for the person to be at large and that the person will not engage in acts of sexual violence if discharged.” Id. § 394.918(3). If the court determines that probable cause exists, “the court shall set a trial before the court on the issue.” Id.
At the limited probable cause hearing, the petitioner bears the burden of proof. Westerheide v. State, 888 So.2d 702, 705 (Fla. 5th DCA 2004). However, in making a probable cause determination, the court must assume the petitioner’s evidence is true. Chukes, 90 So.3d at 954 (citing In re Commitment of Allen, 927 So.2d 1070, 1074 (Fla. 2d DCA 2006)). *139 The trial court must consider only the evidence presented by the petitioner; it must not make credibility determinations or weigh the petitioner’s evidence against that presented by the State. Chukes, 90 So.3d at 954 (citing Allen, 927 So.2d at 1074; Westerheide, 888 So.2d at 706). The trial court’s task is “not to make a final determination on the conflicting evidence,” but rather, it is to “determine whether there is sufficient evidence to cause a person of ordinary prudence to conscientiously entertain a reasonable belief that the committed person’s mental abnormality or personality disorder has so changed that the person is safe to be at large.” Chukes, 90 So.3d at 954 (citation omitted).
Three of our recent opinions are instructive. In Chukes, the evidence presented at the hearing consisted of the FCCC’s annual review report and a report from Chukes’s independent examiner, Dr. Carr. Id. at 950. The FCCC’s report found that Chukes was progressing in his treatment, but that he would benefit from consistently applying himself toward obtaining his GED and from further treatment. Id. It also found that Chukes “ha[d] yet to fully address relevant treatment issues that are associated with his offending history,” and recommended that he continue treatment in the FCCC. Id. Dr. Carr’s report, on the other hand, found that staying at the FCCC any longer would be unproductive for Chukes and concluded that Chukes was unlikely to engage in acts of sexual violence if released. Id. The report noted that Chukes’s offense occurred when he was fourteen to sixteen years old, his offense was not predatory, no force or threats were used on the victim, and the results of the STATIC-99 test reflected that he had a low risk of reoffending. Id. at 955. It further noted that Chukes passed a polygraph, which included questions concerning deviant thoughts, and that he had demonstrated no evidence of ongoing antisocial behavior. Id. Lastly, Dr. Carr wrote: “It is worth noting that ... the risk instrument used in these evaluations has changed remarkably [since Chukes’s commitment], resulting in lower predictions of recidivism. In my opinion, this individual would be highly unlikely to be referred for commitment if his initial evaluation occurred at this time.” Id. The trial court determined that Chukes had not established probable cause; we reversed, holding that Chukes presented sufficient evidence at the limited probable cause hearing to be entitled to a full trial. Id. at 956.
In Spivey v. State, 100 So.3d 1254 (Fla. 5th DCA 2012), the evidence presented at the limited probable cause hearing was the FCCC’s annual report and a report by Spivey’s independent psychologist, Dr. Le-porowsky. Id. at 1256. The FCCC’s report found that Spivey was progressing, but that he would benefit from further treatment and recommended that he continue treatment at the FCCC. Id. at 1257. Dr. Leporowsky’s report found that Spi-vey’s behavior had changed in positive ways, he had passed two polygraphs, and he had developed a “Relapse Prevention Plan.” Id. It concluded that Spivey was unlikely to engage in acts of exhibitionist behavior if discharged and recommended he be released. Id. At the hearing, the court commented on the fact that Spivey had not completed his treatment program. Id. The trial court concluded that probable cause did not exist. We reversed, holding that Dr. Leporowsky’s report was adequate to establish probable cause. We noted that the Act “contains no requirement that the committed person must complete the treatment program established by the Florida Civil Commitment *140 Center.” Id. at 1256.[3]
Lastly, in Sherman v. State, 107 So.3d 1225 (Fla. 5th DCA 2018), Sherman presented the reports of two mental health experts, Dr. Carr and Dr. Cauley. Dr. Carr found that there was no evidence of “ongoing sexually deviant thoughts or behavior” during Sherman’s ten years of civil commitment, and that Sherman showed no appreciable “ongoing antisocial behavior.” Id. at 1226. Dr. Carr indicated that based on the updated STATIC-99, Sherman would not qualify for civil commitment. Id. Dr. Carr also found that Sherman’s failure to participate in a specific sex-offender treatment group was offset by Sherman’s participation in various other programs, including Moral Recognition Therapy (MRT), religious studies, Alcoholics Anonymous, and also by his acquisition of a GED. Id. Dr. Cauley’s report explained that the MRT Sherman completed “taught him to recognize criminal thinking and to develop new, noncriminal coping and interacting skills.” Id. Both reports concluded that Sherman’s condition had changed and that he would no longer be a menace to society. Id. The trial court held that Sherman had not presented sufficient evidence to establish probable cause. Again, we reversed, holding that the two reports were sufficient evidence, under Chukes and Spivey, to warrant a trial. Id.
As noted, Holder submitted two psychologists’ reports, one from Dr. Peter Bursten and one from Dr. Gregory De-Clue. Those reports were sufficient to establish probable cause to believe that Holder’s condition has so changed that it is safe for him to be at large and he would not engage in acts of sexual violence if discharged. In accepting the report that recommended continued commitment and rejecting those that recommended release, the trial court improperly engaged in a weighing of the conflicting reports. Predicting future behavior is an inexact science at best; however, Holder has met his burden and must be allowed his day. in court.
REVERSED AND REMANDED.
GRIFFIN and LAWSON, JJ., concur.

. §§ 394.910-932, Fla. Stat. (1999).

. Florida law establishes that consent is not a defense to lewd or lascivious offenses committed upon or in the presence of persons less than sixteen years of age. See § 800.04(2), Fla. Stat. (2008) ("Neither the victim’s lack of chastity nor the victim's consent is a defense to the crimes proscribed by this section.”).

. The State has argued that Holder should not be released because he has not completed his treatment. For the reason stated in Spivey, this argument is unpersuasive. The standard is not whether the offender has completed treatment; rather, it is whether his condition has changed such that it is safe for him to be at large.